## HERBERT LEMUEL BRADLEY V. STATE

No. 34,058.   January 10, 1962
Motion for Rehearing Overruled February 28, 1962

*Joe McNicholas* and *Hugh Snodgrass,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *James K. Allen,* First Assistant District Attorney, *Ben Ellis, Paul French, Phil Burleson,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is robbery with a firearm; the punishment, death.

The State's evidence is undisputed that appellant came into the drive-in grocery store where Ellis Dodson, the complaining witness, was working, on September 4, 1960; that the store belonged to Dodson's son; that appellant ordered a cold drink; that at this time there were other persons in the store and the other persons left and appellant said, "Give me another of the same"; that Dodson went to the icebox or refrigerator to get the cold drink and when he turned around he saw appellant standing by him pointing a gun at him; that while pointing the gun at him appellant told Dodson to give him his purse; that at this time appellant's gun was pointed at Dodson's body; that Dodson was in fear of losing his life or of suffering serious injury at the hand of the appellant; that Dodson gave appellant his personal money, about $146.00, out of his purse and appellant put the money in his pocket; that appellant said, "Let's go to the cash register"; that when Dodson got to the cash register appellant said, "Open it up"; that appellant said, "Give me the money,"

which was approximately $200.00, and during this time Dodson had both of his hands up in the air and appellant pulled the trigger on the gun; that the gun mis-fired and that appellant pulled the trigger again and the gun fired this time, the bullet hitting Dodson in the abdomen; that Dodson knocked the gun out of appellant's hand, to the floor, and appellant grabbed Dodson and they scuffled and fell on the floor; that appellant got a hammer and knocked Dodson in the head with it; that Dodson knocked the hammer out of appellant's hand; that during the scuffle Dodson got his gun from the shelf by the cash register and tried to shoot appellant but appellant got his gun about the same time; that appellant shot Dodson again, this time in the finger, breaking the bone all to pieces; that appellant next shot Dodson in the chest while they were still struggling; that Dodson tried to shoot appellant but couldn't pull the trigger of the gun because his finger was broken; that appellant then shot Dodson again in the stomach and more than one time; that appellant took the gun from Dodson; that Dodson went outside the store and appellant followed him out and shot Dodson with his own gun, the number of times unknown to Dodson, and that appellant then ran off.

Dodson further testified that before being shot he had done everything that appellant had ordered and directed; that Dodson had not made any move whatsoever to resist appellant; that during the scuffle Dodson bit appellant on the side of the neck and brought blood; that several people came up after appellant had run off; that an ambulance took Dodson to Baylor Hospital where he stayed a total of 42 days; that Dodson is still under a doctor's care; that Dodson saw appellant two and one-half months later at a line-up at City Hall.

J. D. Goodson, a mechanic, testifying for the State, stated that he went in a store on Colonial and saw appellant and Dodson tussling over a gun; that he ran out of the store; that Dodson came out of the store and said, "Somebody help me"; that appellant ran out of the store with the gun and shot Dodson three times, while standing about eight feet from him; that Dodson went to the ground; that appellant threw the gun down and ran; that Goodson called the police.

Jerry Don Byrom, City of Dallas police officer, testifying for the State, stated that he got a radio message to go to 4919 Colonial; that he saw Dodson on the floor; that he called an ambulance; that Dodson gave him a description of the person who had robbed him; that he recovered two guns at or near the scene.

Robert E. Dugger, City of Dallas police officer, said that he saw Dodson on September 4, 1960, at 4919 Colonial and that he found a gun outside the building on the sidewalk.

Roosevelt Eubanks, testifying for the State, related that he knows appellant; that appellant was living with him on September 4, 1960; that he last saw appellant on that date between 9:00 and 9:15; that about twenty minutes later police came and he gave them permission to search his house.

State's witness B. L. Senkel, testifying for the State, stated that he was a detective in homicide and robbery, City of Dallas Police Department; that he saw a .22 caliber gun which had five empty cartridges and one loaded cartridge in the cylinder; that the loaded cartridge had a firing pin mark on it; that there were two loaded cartridges and four empty cartridges in the other gun; that he went to where appellant was staying with Eubanks; that he first saw appellant on January 16, 1961, in Portland, Oregon, in jail where appellant was booked under the name of Ricky Creston; that he returned appellant to Dallas.

The State adduced testimony from Dr. Ross L. Curtis, Jr., to the effect that he was a licensed and qualified physician with a specialty in general surgery; that he saw Dodson on September 4, 1960, in the emergency room at Baylor Hospital; that Dodson was "considered to be very critical; even almost to the point of death"; that Dodson was suffering from gun shot wounds; that Dodson remained in very critical condition for about one week and that Dodson is still under his care.

City of Dallas police officer E. R. Beck, as a State's witness, testified that he went to the Eubanks residence where appellant was living and found appellant's pants and shirt under the bed in his room and that the shirt had blood on the left side by the collar.

The appellant did not testify in his own behalf. The only testimony adduced by appellant was from his mother, Lillie Mae Dunson, and his aunt, Mattie Lee Nelson, in support of his defense of insanity. The mother stated that appellant was 19 years of age, born on June 15, 1941; that appellant was not of sound mind, that he got hit on the head while in high school and that he had been acting strangely ever since in that he would burst out in laughter and sit in the middle of the floor and play with toys and that his head was hurting him a lot. The aunt

stated that appellant was not normal, that he was of unsound mind, and that he played with toys like he was a two-year-old child.

The careful and able trial judge fully submitted appropriate issues of insanity and all other issues raised by the evidence. No exceptions or objections were taken to the court's charge. The jury found appellant sane on both issues of insanity and found him guilty as charged in the indictment and assessed his punishment at death. We find the evidence amply sufficient to sustain the jury's verdict.

By brief and oral argument, appellant's counsel urges a reversal of this cause on what he terms "equitable grounds". Appellant contends that since his acts did not result in death, and because of his age, we should reverse the case because the punishment is excessive. The punishment assessed is within the limits prescribed by statute. In Mitchell v. State, 124 Texas Cr. Rep. 598, 63 S.W. 2d 1026, in affirming a robbery by firearms case, this Court said:

"The robbery was a bold one. The jury heard all the testimony and have assumed responsibility for a death penalty."

Under the facts in this case, we do not find the punishment too severe nor excessive. We find no basis to disturb the punishment assessed by the jury.

Appellant complains that the indictment is defective in not charging him with using either "a" gun or "two" guns. We find the indictment to be in the usual form, which has been approved many times. It charges appellant with committing the robbery by exhibiting "a firearm, to-wit: gun". While the evidence may show that appellant emptied his own gun on Dodson before using Dodson's gun, it does not cause a variance. Appellant, being charged with robbery by use of and exhibiting a firearm, did just that. The taking of the money, the robbery, was completed before the second firearm or gun came into being in the cause. We find the charge of exhibiting "a firearm, to-wit: gun" proper. Appellant's contention is overruled and is without merit.

Finding no error, the judgment is affirmed.